**In re BELL.**

District Court, W. D. Pennsylvania. July 2, 1929.

No. 12172.

678

John D. Meyer, U. S. Atty., and John A. McCann, Asst. U. S. Atty., both of Pittsburgh, Pa.

Smith, Shaw, McClay & Seifert and George D. Wick, all of Pittsburgh, Pa., for bankrupt.

McVICAR, District Judge. The United States, by D. B. Heiner, collector of internal revenue, filed in the bankrupt's estate its claim of $280,865.78, together with interest thereon, for taxes due the government. The trustee in bankruptcy excepted to the allowance of the 1923 item, in the sum of $56,655.03, and the two items for 1924, of $69,611.44 and $109,533.73. Much testimony was taken by the referee in bankruptcy, and, after argument and consideration, he made an order on April 12, 1929, allowing the government's claims for 1923 and 1924. On May 28, 1929, the trustee in bankruptcy presented his petition to this court praying for a review of the order of the referee allowing the government's claim for the 1923 and 1924 taxes aforesaid. On the same date this court made an order permitting the trustee to offer further testimony in support of his exceptions. On June 8, 1929, the matter was referred to the referee to take additional testimony, and with directions to file a supplementary report containing such additional findings of fact and conclusions of law as he might deem proper. On June 14, 1929, the referee filed in this court supplementary findings of fact and conclusions of law based upon additional testimony taken before him. In the referee's conclusions of law, he found that the 1923 taxes should be allowed, and that the 1924 taxes should be disallowed. The United States then filed a petition for a review as to the disallowance of the 1924 taxes, and as to the referee's findings of fact

that the loss on the Lauraine Magneto Company's stock was sustained in 1922.

The questions now before the court are whether the referee was correct in allowing the government's claim for taxes for the year 1923; also in allowing its claim for the year 1924, and the subsequent conclusions of law disallowing the taxes for the year 1924.

The taxes allowed for 1923 embraced two additional assessments made by the Commissioner of Internal Revenue for that year: The first is based on an additional assessment in the sum of $200,000, for which the taxpayer claimed credit for a loss in his return, on account of Lauraine Magneto Company stock owned by him; the second is an additional assessment in the sum of $82,460.-35, which the taxpayer claimed credit for in his return, as a bad debt.

The Lauraine Magneto Company stock was issued in the name of a third person. The stock was paid for by the taxpayer. It was owned by him, and the certificate was issued in the name of a third person merely for convenience.

The assessment is prima facie evidence of the taxpayer's liability. In re Glover-McConnell Co. (D. C.) 9 F (2d) 683; Becker v. U. S. (C. C. A.) 21 F.(2d) 1003, 1004; Avery v. Comm. (C. C. A.) 22 F.(2d) 6, 55 A. L. R. 1277; U. S. v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131. The burden is on the taxpayer to show that he is entitled to a deduction in the year in which he claims it. Royal Packing Co. v. Commissioner of Internal Revenue (C. C. A.) 22 F.(2d) 536.

Three creditors of the Lauraine Magneto Company, in the year 1924, presented their petition to the United States District Court for the Eastern District of New York. They alleged in their petition an act of bankruptcy requiring insolvency, and further that said company was insolvent. On this petition the company was adjudicated a bankrupt on June 25, 1924, which is an adjudication of insolvency. Insolvency, under the Bankruptcy Act, is defined as follows: "A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." Section 1(15), 11 USCA § 1(15).

Upon adjudication of insolvency, the stock in the company became worthless, although it may have been before that time.

It was the duty of the taxpayer to claim the loss in the year it was sustained, which was 1921; hence he could not make claim therefor in 1923.

The tax claim based on the assessment of $200,000, being the value of the Lauraine Magneto Company stock, must be sustained. The second item entering into the additional assessment for the year 1923, of $56,655.03, was caused by the disallowance of a credit claimed by the taxpayer in his return, of $82,450.35, as a bad debt.

The taxpayer guaranteed the account of W. A. Magee, the debtor, with a brokerage firm in the matter of buying and selling stocks. As a result, the taxpayer was required to pay the brokerage firm the sum of $82,460.35 in the year 1923. The Revenue Act of 1921 provides that in computing net income there shall be allowed as deductions "debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part. * * * " Section 214(a)(7), 42 Stat. 240.

Magee told the taxpayer in 1923 he could not pay the amount which the taxpayer paid to the brokerage firm. The taxpayer told him he knew that—it would not be a total loss—he would probably save about 25 per cent. thereof. Magee was mayor of Pittsburgh at the time, receiving a salary of $10,000 per year; he also was receiving income in the amount of $10,000 or upwards per annum from his law practice. The evidence showed that his assets and liabilities were about the same. By reason of the high moral character of Mr. Magee, the debtor, his large earning capacity, property holdings, and standing as a citizen and as a public official, the evidence (which was meager) would not have justified the Commissioner of Internal Revenue, or the referee, in finding that this debt was worthless. There is no evidence that it was charged off. The claim of the government based on this assessment must be sustained.

The next question is whether the referee erred in his order of April 12, 1929, allowing the government's claim for taxes for the year 1924, and in connection therewith whether he erred in his subsequent conclusion of law disallowing the government's claim for taxes for the year 1924.

The 1924 taxes allowed embrace two items, both of which are alleged to be based on an additional assessment made by the Commissioner for that year, amounting to $531,150.64, the amount of the assessment the taxpayer claimed in his tax return as a loss on account of a bad debt. In the return it is stated: "Item 14—Bad debt charged off: The O. A. Kraeer Co. of Bartlesville, Oklahoma, owed John A. Bell on Dec. 31, 1923, the sum of $802,689.29. On account of the fact that Mr. Bell was either endorser or guarantor on their notes for a considerable sum, he decided to allow them to charge him $800,000.00 in order to make the company solvent. After doing this, the company showed capital and surplus of $268,849.36 and John A. Bell, therefore, being practically the only stockholder charged off on his books on Dec. 31, 1924, the sum of $531,150.64 as a bad debt."

The referee in his first findings held that the taxpayer was not entitled to a credit on account of this claim, either as a bad debt or as a stock loss. In his supplementary findings of fact and conclusions of law he found the taxpayer was entitled to the amount aforesaid as a credit on account of a stock loss, and therefore concluded that the government's claim for taxes for the year 1924 should be disallowed. The trustee, by his counsel, in the oral argument before this court, admitted that the taxpayer was not entitled to a credit for this claim as a bad debt, and based his claim solely as a stock loss. His written argument followed his oral argument. We shall consider the contention of the trustee as restricted by him at the trial before this court.

In the year 1923 the taxpayer and O. A. Kraeer were the owners of all the capital stock of the O. A. Kraeer Company. The taxpayer owned five-sixths of the stock, and O. A. Kraeer one-sixth. The corporation was an Oklahoma corporation engaged in the business of producing oil and gas. It was insolvent at that time. The company owed the taxpayer $802,717.86. In order that the company be made solvent and capable of carrying on its business, the taxpayer, in November or December 1923, allowed the company to charge him with $800,000, or, in other words, he released his debt against the company to that extent. He also conveyed to the company $300,000 or upwards of the capital stock of the Carnegie Coal Company. After this release and conveyance, the assets of the O. A. Kraeer Company consisted of oil leases and equipment net $398,518.96; Carnegie Coal Company stock, $311,733.32. The capital stock and surplus shown aggregated $268,849.36. At the time the taxpayer released the debt and made the

gift of the Carnegie Coal Company stock to the O. A. Kraeer Company, Mr. Kraeer entered into the following agreement, as testified to by the taxpayer's secretary: "Mr. Kraeer agreed that he would turn over to Mr. Bell his one-sixth of the stock until such time as Mr. Bell might get out his $800,000. I might say, however, that matters developed so very quickly afterward that Mr. Kraeer to the best of my knowledge, never sent his stock on."

One year later, in December, 1924, by reasons of reverses to the Kraeer Company during the preceding year, it was insolvent, and its stock was worthless. The question arises, What loss did the taxpayer sustain by reason of his stockholding in the Kraeer Company? Section 214 of the Revenue Act of 1924 (26 USCA § 955) provides that in computing net income there shall be allowed as deductions losses sustained during the taxable year incurred in trade or business; and also losses sustained in any transaction entered into for profit, though not connected with the trade or business. Paragraph 6, § 214(a), provides: "The basis for determining the amount of the deduction under this paragraph, or paragraph (4) or (5), shall be the same as is provided in section 204 for determining the gain or loss from the sale or other disposition of property."

Section 204 (26 USCA § 935) provides: "(a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that" (The exceptions are here immaterial.) [5] It is therefore apparent that, in order to determine what loss the taxpayer sustained by reason of his ownership of stock in the O. A. Kraeer Company, it is necessary to determine the cost of such stock to him. There is no evidence of what the cost was to the taxpayer for the five-sixth interest that he had in the total capital stock of the O. A. Kraeer Company, which he owned prior to the year 1923. As to the one-sixth interest owned by Mr. Kraeer in November, 1923, and which he agreed to turn over to Mr. Bell until such time as Mr. Bell might get out his $800,000, the title of the taxpayer was that of pledgee. Mr. Kraeer agreed to pledge his one-sixth interest in the capital stock of the Kraeer Company with the taxpayer, the latter to hold the same until he was reimbursed the $800,000, which he had released to the Kraeer Company. The stock to be delivered to the taxpayer was not delivered.

If we are to assume that the agreement between Kraeer and Bell constituted a sale, and that Bell was the equitable owner of the one-sixth interest in the capital stock formerly owned by Kraeer, then the question arises, What did this one-sixth interest cost Bell? It would be absurd to assume that Bell paid $800,000 for this one-sixth interest; the O. A. Kraeer Company being insolvent at the time, and both Kraeer and Bell being familiar with its condition. The taxpayer paid nothing to Kraeer directly. The fair inference from the testimony seems to be that the taxpayer, in order to rehabilitate financially the O. A. Kraeer Company, and thereby to protect and promote his five-sixth ownership therein, relinquished or released the $800,000 indebtedness that he formerly held against said company, and at the same time gave it upwards of $300,000 in capital stock of the Carnegie Coal Company held or owned by the taxpayer. This was done primarily for the advantage of the taxpayer, but, incidentally, it necessarily was an advantage to Kraeer on account of his stockholdings in the company. Kraeer pledged his stock with Bell on account of the advantage to the company which would result from the taxpayer's release and gift of stock, and the ultimate benefit which might inure to him as owner of said stock. It does not appear from the evidence what the cost of the one-sixth interest in the capital stock of the O. A. Kraeer Company was to Bell, if any. The burden rested upon the taxpayer to show that he was entitled to this claim as a stock loss. Royal Packing Co. v. Commissioner of Internal Revenue (C. C. A.) 22 F. (2d) 536. The trustee has failed to meet this burden. It therefore follows that the claim of the government for taxes for the year 1924 should be sustained.

The orders of the referee of April 12, 1929, allowing the government's claim for taxes for the years 1923 and 1924, with interest, are confirmed.

The supplementary conclusion of law by the referee, disallowing the government's claim for taxes for the year 1924, is overruled.